UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DORIS D. CRAWFORD,

                            Plaintiff,

              -against-                         **ORDER AND MEMORANDUM**
                                                     04-CV-1853
NEW YORK LIFE INSURANCE CO., et al.,

                           Defendants.
------------------------------------------------------------X
GARAUFIS, United States District Judge:

     *Pro se* plaintiff Doris D. Crawford ("Plaintiff" or "Crawford") brings this action claiming

that defendant New York Life Insurance Company ("New York Life" or "Defendant") violated

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et</u> <u>seq.</u> ("Title VII") and the

Americans with Disabilities Act, 29 U.S.C. § 706 <u>et</u> <u>seq.</u> ("ADA").  Pursuant to Federal Rule of

Civil Procedure 56, New York Life moves to dismiss Crawford's Title VII and ADA claims.  For

the reasons set forth below, Defendant's motion is GRANTED.

## I.     BACKGROUND

## A.     Factual Background

     Plaintiff first became employed by New York Life in November 2000 on a temporary

basis, as a Secretary in Defendant's Office of General Counsel ("OGC").  (Def's 56.1 Statement

¶ 6; Deposition of Crawford, dated April 21, 2005 ("Crawford Dep.") at 42.)  On February 1,

2001, Defendant hired Crawford as a full-time secretary in the OGC, working for different

attorneys in the office until March 2001, after which she supported the same three attorneys.  (<u>Id.</u>

¶ 7; Crawford Dep. at 166.)  Defendant is a Jehovah's Witness, and received permission  from

New York Life to leave work at 5:00 p.m. on Tuesdays and Thursdays to attend religious

meetings.  (Id. ¶ 8; Crawford Dep. at 131-32.)

Crawford alleges that she suffers from irritable bowel syndrome ("IBS").  (Crawford Dep. at 132-33.)  To treat her IBS, she saw one doctor for eight months in 2003, and participated in two IBS research clinical trials, but had a bad reaction to medication prescribed for her.  (Id. at 157-58.)  Crawford testified that while she worked at New York Life, she had "[d]iarrhea . . . throughout the day in early stage, besides that I had the rashes, I had headaches, I had palpitations, I had breathlessness, I had panic . . . . If I was at work, I was in the bathroom a lot." (Id. at 136-37.)  She testified regarding how IBS impacted her ability to work at New York Life as "detain[ing me] in the bathroom, it would limit where I was, but . . . I could do what I needed to do.  It would just take me longer to do things and I just wasn't as available."  (Id. at 138.)  She also testified that while at New York Life, "it was stressful to be around people[.]"  (Id. at 137.)

Crawford testified that her symptoms have improved over time, including diarrhea once a month, constipation three times a month, [stomach cramps] one to two days per week, with daily flatulence.  (Id. at 134.)  When asked how IBS affects her now on a daily basis, Crawford testified:

> It's more mental and emotional . . . . The constant awareness of it and being in the presence of others.  So more of a social isolation, I guess.  So that I have to carry certain things to feel at least that I am not as offensive to be around.  Carrying personal sprays and things of that nature and I use them frequently . . . . There are places or people that I tend not to want to be around because if it's somebody new, I tend to not want to be in that environment.  And I have to limit pretty much my time socially.

(Id. at 135-36.)  Crawford takes no medicine and follows no special diet or other regimen to control her IBS.  (Id. at 159-60.)

During her employment at New York Life, Crawford brought to the attention of LaDonna Carr ("Carr"), her supervisor, a number of grievances.  In March 2001, Crawford complained that

she was earning $500 less per annum than what the employment packet indicated she would earn. (Id. at 206, 209.)  She also complained to Carr regarding the treatment of her by employees and supervisors at New York Life.  She first complained about "gossip" that co-employees spread about her using electronic mail.  (Id. at 210.)  She said that two other secretaries, "Janet," and "Anesta," talked about her using the pronoun "he" to disguise their intentions.  (Id. at 211, 213.)  When she asked technical support for an electronic mail account to communicate with the attorneys she supported, the technical support employee "was very smug," and responded "[y]ou will get it when I give it to you."  (Id. at 169.)  On another occasion, a male employee walked past her, looked at her, and made a comment to another male employee about "bra size," and laughed.  (Id. at 173-74.)  Plaintiff also overheard the same employee state about female Jehovah's Witness members who live in his neighborhood that they "let themselves go," to a group with other people in the lunchroom.  (Id. at 175.)  In another instance, she suggested celebrating New York Life's hiring her with co-workers with "bubbly," and she overheard a co-worker state that "this place is going to the dogs."  (Id. at 182.)  She also complained that her co-worker "Anesta" commented that she (Anesta) "looked good in her clothes and referring to her weight and size," from which Plaintiff inferred that Anesta was insinuating "that my clothes were tight and I needed to lose weight."  (Id. at 191.)

Crawford also informed Carr about her IBS, and complained about comments and gestures made by co-workers regarding Plaintiff's IBS symptoms.  During her tenure at New York Life, co-workers publicly commented on smells emanating from Plaintiff's area due to IBS-caused flatus.  One co-worker would hold her nose and say "it stinks" as she walked past Plaintiff's area (id. at 194); others would make similar comments, and a maintenance employee told her that her work area was moved close to the restroom "because you stink."  (Id. at 195.)

3

She also stated that employees would use other bathrooms because of the smells she produced because of IBS. (Id. at 199.) Plaintiff acknowledged that the area smelled of flatus because "I had gas 24/7." (Id. at 202.)

New York Life has a sick policy, of which Plaintiff was aware, allowing only seven days of absences per year. (Id. at 236.) Plaintiff had a number of doctors appointments beginning in April 2001 that led her to take time away from the office. (Id. at 227.) In May or June 2001 Plaintiff was met with a supervisor, Carol O'Driscoll, warning her that continued time away from work during work hours could result in dismissal. (Id.) On July 23, 2001, Plaintiff failed to call her employer ahead of time before reporting late to work. (Id. at 240.) On August 13, 2001, Plaintiff was provided a written "final warning" informing her that she was over the acceptable number of absences and that further absences would result in her dismissal. (Id. at 236.) On September 5, 2001, Plaintiff again arrived late without previously informing the employer. (Id. at 250-51.) On September 14, 17, and 18, 2001, Plaintiff again took sick leave because "instead of things improving, people were acting the same . . . . it was still a hostile work environment under the circumstances." (Id. at 259.) Plaintiff was terminated on September 18, 2001 for absences and latenesses in violation of New York Life's absence policy. (Id. at 260.)

**B.      Procedural Posture**

Following Plaintiff's termination from New York Life, Crawford filed a complaint with the New York State Division of Human Rights ("NYDHR") on November 5, 2001. On February 19, 2004, Crawford received a Right to Sue letter from the Equal Employment Opportunity Commission. Her complaint, which alleges violations of Title VII and the ADA, and included as defendants New York Life and individual supervisors, was received by this court's *pro se* office

on May 3, 2004.

On October 19, 2004, I dismissed Plaintiff's complaint as to individual defendants, as individual employees are not "employers" under Title VII and the ADA, and found that Plaintiff's complaint failed to allege sufficient facts regarding her IBS for this court to conclude that she suffered a substantial impairment on a major life activity that would permit suit under the ADA. (See Memorandum and Order, dated Oct. 19, 2004 at 5 (citing Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 871 (2d Cir. 1998). However, as Plaintiff is *pro se*, I granted her leave to amend her complaint, which she did on November 22, 2004.

Plaintiff's amended complaint alleges workplace harassment, retaliation, and discrimination based on her gender and IBS in violation of Title VII and the ADA. (Am. Compl. at 2-3.) Defendant now moves for summary judgment on Plaintiff's remaining Title VII and ADA claims.

## II.     DISCUSSION

### A.     Standard of Review

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law, *i.e.*, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Fed. R. Civ. P. 56(c) and Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)) "A fact is material for these purposes if it might affect the outcome of the suit under the governing law. An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The moving party bears the burden of establishing the absence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). If the moving party has met this burden, the non-moving party has the burden of "set[ting] forth

specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

"The evidence of the party opposing summary judgment is 'to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "Moreover, the pleadings of a pro se plaintiff must be read liberally and should be interpreted 'to raise the strongest arguments that they suggest.'" Id. (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). However, "[t]he nonmovant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118,121 (2d Cir. 1990) (internal quotations and citations omitted); see Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Rather, the opponent can create a genuine issue of material fact only by citing competent, admissible evidence. Glasso v. Eisman, Zucker, Klein & Ruttenberg, 310 F. Supp. 2d 569, 574 (S.D.N.Y. 2004) (citing Sarno v. Douglas Elliman-Gibbons & Ives, 183 F.3d 155, 160 (2d Cir. 1999)).

## B.  Plaintiff's ADA Claim

### 1.  *ADA Discrimination*

The Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA") provides that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees[.]" 42 U.S.C. § 12112(a). Under the ADA, Crawford undertakes the initial burden of establishing a prima facie case of disability discrimination. Heyman v. Queens Village Comm. for Mental Health, 198 F.3d 68, 72 (2d Cir. 1999). To make out a prima facie case, Crawford must show that (1) New York Life is subject to the ADA; (2) she was a person with a disability within the meaning of the ADA; (3) she was otherwise qualified to perform the essential functions of his job, with or

without reasonable accommodation; and (4) she suffered adverse employment action because of her disability.  Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 869-70 (2d Cir. 1998).  New York Life does not contest the first element of Crawford's prima facie case.

As to the second element, the ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).  Crawford contends that her IBS condition was a physical or mental impairment that substantially limited one or more of her major life activities, or alternatively that the employer regarded her as having such a disability.

ADA regulations, which are non-binding but are helpful in guiding this discussion, define a "substantial limitation" as follows:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same life activity.

29 C.F.R. § 1630.2(j)(1).

The Supreme Court has articulated a three-part test for evaluating an ADA claim of "disability."  In Bragdon v. Abbott, 524 U.S. 624, 118 S. Ct. 2196, 141 L. Ed. 2d 540 (1998), the Court held that a trial court must (1) determine whether the plaintiff suffers from a physical or mental impairment; (2) consider whether the activity allegedly impaired qualifies as a "major life activity" under the ADA; and (3) determine whether the impairment limited the major activity.  Id. at 631.

I find that Plaintiff adequately shows for the purposes of Defendant's summary judgment

motion that she has IBS and that IBS-related symptoms impair one or more major life activities. I find, however, that her IBS-related symptoms do not "substantially limit" any major life activity. ADA regulations define major life activities as including such functions "as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). This is a non-exhaustive list, and Plaintiff's claimed impairments, i.e. that IBS has limited her ability to interact with others, to eliminate waste, and to work (see Crawford Affidavit at 3-4),[1] have been previously held by the Second Circuit to constitute major life activities. See Jacques v. DiMarzio, Inc., 386 F.3d 192, 203 (2d Cir. 2004) (interacting with others is a major life activity); Ryan, 135 F.3d at 871-73 (finding that elimination of waste and working are major life activities).

However, Plaintiff has failed to present sufficient competent evidence that IBS has substantially limited these activities. ADA regulations counsel that in deciding whether a condition substantially limits a major life activity, a court should consider "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." Id. § 1630.2(j)(2). The first factor, the nature and severity of the impairment, weighs against a finding of a substantial limitation. In her deposition testimony, Plaintiff stated that IBS detained her in the bathroom frequently and caused her work area to smell of flatus. Plaintiff did not testify that IBS caused problems controlling the elimination of

---

[1] Plaintiff also claims in her Affidavit in opposition to Defendant's motion that she is now limited in her ability to be "able to drive to religious meetings[.]" (Crawford Affidavit at 3.) However, "[d]riving an automobile is not a major life activity." Sacay v. The Research Foundation of the City University of New York, 193 F. Supp. 2d 611, 627 (E.D.N.Y. 2002) (citing Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 643 (2d Cir. 1998)).

waste, beyond needing frequent trips to the bathroom. Because Plaintiff's work area adjoined the

restroom, it is uncontested that she had access to a bathroom, and Plaintiff does not allege that

her IBS ever caused extreme symptoms, such as requiring her to run to the bathroom without

notice, or soiling herself. See Ryan, 135 F.3d at 871; Sacay, 193 F. Supp. 2d at 628-29

(Plaintiff's IBS symptoms, including gas, bowel urgency, severe cramps, and nausea did not

substantially limit her ability to eliminate waste because they "merely indicate that she was

diagnosed with [IBS] and that she needs to be near a bathroom."). Therefore, Plaintiff's IBS

symptoms did not limit her ability to control waste.

Further, Plaintiff's symptoms did not substantially limit her ability to work, as Plaintiff

conceded that IBS did not prevent her from completing any work assignment or otherwise limit

her life activities beyond requiring frequent trips to the bathroom. To the extent that Plaintiff

claims that IBS symptoms required frequent absences to attend doctor's appointments that

resulted in her termination (see Crawford Affidavit at 4), I reject Plaintiff's Affidavit as self-

serving and contradicted by her previous deposition testimony. The credible evidence shows that

the specific instances that led to Plaintiff's termination, i.e., her absences on September 14, 17,

and 18, 2001, were not caused by her need to attend medical appointments, but rather were

precipitated by Plaintiff's unhappiness at how her co-workers treated her. (See Crawford Dep. at

259-60.) Plaintiff does not submit any evidence, such as copies of doctor's notices, electronic

mail, or other documentary evidence that might rebut her own deposition testimony. Moreover,

assuming arguendo that Plaintiff has shown that her IBS symptoms resulted in her termination at

New York Life, Plaintiff has not shown that these impairments would substantially limit her

ability to perform any other job. An inability to perform "a single, particular job" is not a

substantial limitation upon working. Sutton v. United Air Lines, Inc., 527 U.S. 471, 492, 119 S.

Ct. 2139, 144 L. Ed. 2d 450 (1999) (quoting 29 C.F.R. § 1630.2(j)(3)(i)). While Plaintiff's frequent trips to the bathroom limited her availability and her resentment at how co-employees treated her may have caused her anxiety, they did not substantially limit her ability to work within the meaning of the ADA.

The limitations created by IBS on Plaintiff's ability to communicate with others, while credible and significant, do not constitute a substantial limitation. The Second Circuit instructs that "[t]his standard is satisfied when the impairment severely limits the plaintiff's ability to connect with others, i.e., to initiate contact with other people and respond to them, or to go among other people -- at the most basic level of these activities." DiMarzio, 386 F.3d at 203. Plaintiff testified that in response to her flatus, her New York Life co-workers made remarks and gestures that embarrassed her. Plaintiff further testified that her embarrassment resulted in stress-related symptoms, including headaches, heart palpitations, breathlessness, and panic. An anxiety disorder can be considered by a court to be a disability if it substantially limits the disabled individual's ability to communicate with others. See McAlindin v. County of San Diego, 192 F.3d 1226, 1234 (9th Cir. 1999) (holding that employee diagnosed with anxiety and panic disorders could be substantially impaired in the major life activity of interacting with others). However, Plaintiff testified that she was able to communicate with her superiors and co-workers effectively enough to complete her work.[2] Furthermore, she testified that she is an extremely active Jehovah's Witness, participating in religious activities with other adherents

---

[2] To the extent that Plaintiff bases her claim on her difficulties *getting along with* others, "mere trouble getting along with coworkers is not sufficient to show a substantial limitation in the activity of interacting with others." Matya v. Dexter Corp., 97-CV-763C, 2006 U.S. Dist. LEXIS 18358, at *21 (W.D.N.Y. Apr. 3, 2006).

several times per week.[3]  Accordingly, Plaintiff's testimony demonstrates that while her flatus

has caused considerable embarrassment to her and has limited her social engagements, that it has

not substantially limited her ability to communicate with others.  See Felix v. N.Y. City Transit

Auth., 324 F.3d 102, 107 (2d Cir. 2003) ("An ADA plaintiff who is not otherwise impaired in a

major life activity but suffers debilitating anxiety or stress from a particular job . . . [cannot

defeat a summary judgment motion] merely by alleging that the job causes insomnia, difficulty

breathing, or some other set of disabling symptoms that can be characterized as a syndrome.");

Johnson v. City of New York, 326 F. Supp. 2d 364, 368-70 (E.D.N.Y. 2004) (plaintiff with

"psychosis" not disabled under the ADA because her condition did not substantially limit

working or any other major life activities); Roberts v. N.Y. State Dep't of Corr. Servs., 63 F.

Supp. 2d 272, 285-88 (W.D.N.Y. 1999) (plaintiff recovering alcoholic was not disabled under

ADA because there was no evidence that alcoholism substantially interfered with his ability to

work or perform any other major life activity); Glowacki v. Buffalo Gen. Hosp., 2 F. Supp. 2d

346, 352-53 (W.D.N.Y. 1998) (plaintiff with bipolar disorder psychosis not disabled under ADA

because disorder did not substantially limit any major life activities); Stuart v. Danka Corp., 986

F. Supp. 741, 744-45 (E.D.N.Y. 1997) (plaintiff recovering alcoholic was not disabled under

ADA because alcoholism did not substantially limit any major life activities).

The second factor, duration of the impairment, also militates against the finding of a

substantial limitation to a major life activity.  Plaintiff first exhibited IBS symptoms in 2001, and

Plaintiff concedes that her IBS-related symptoms have diminished over time, and now cause only

occasional cramping, diarrhea, and constipation.  While Plaintiff's condition appears to have no

---

[3] I reject Plaintiff's subsequent self-serving statement in her Affidavit that she "drastically" reduced her hours of religious participation because of IBS symptoms as contradicted by her credible deposition testimony that IBS has not impacted her daily religious activities.  (See Crawford Dep. at 126-27.)

cure, it also appears to be controlled.

The third factor, the permanent or long-term impact of the resulting impairment, also weighs against a substantial limitation. Plaintiff's testimony shows that while medication has not been effective, her exercise and diet regimen appear to have substantially reduced her IBS-related symptoms. Furthermore, Plaintiff's testimony that she is not now physically limited from performing any activity supports the conclusion that IBS does not substantially limit any of Plaintiff's major life activities. Thus, I conclude that Crawford fails to raise a triable issue of fact as to whether her IBS symptoms substantially limit a major life activity.

Plaintiff argues that even if she is not "disabled" within the meaning of the ADA, that New York Life "regarded" her as disabled, because Defendant moved her to a work space that adjoined the women's bathroom. (Am. Compl. at 2; Crawford Dep. at 195, 199.) The ADA defines as disabled a person whose employer "regards" as having an impairment "that substantially limits one or more . . . major life activities." 42 U.S.C. § 12102(2)(A)&(C). "It is not enough . . . that the employer regarded that individual as somehow disabled; rather, the plaintiff must show that the employer regarded the individual as disabled within the meaning of the ADA." Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 646 (2d Cir. 1998) (emphasis omitted). There is an absence of evidence in the record that would allow this court to infer that New York Life considered Plaintiff to be disabled within the meaning of the ADA. Plaintiff claims that she informed her employer about her IBS-related symptoms, and that she was moved near the bathroom. However, assuming the truth of these statements, there is no evidence suggesting that Plaintiff's workspace location was an accommodation for her IBS-related complaints, since those complaints related to her co-workers' treatment of her, not any physical limitation that might necessitate a workspace change. Furthermore, there is no evidence that the

employer ever considered Plaintiff's absences or latenesses as legally required by the ADA or the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq. Given the absence of evidence offered to support the conclusion that the employer regarded Plaintiff's complaints, absences and latenesses as a product of IBS-related symptoms, this court finds that there is no triable issue of fact as to whether the employer regarded Plaintiff as "disabled" within the meaning of the ADA. See Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 160 (2d Cir. 1999) (dismissing ADA claim on summary judgment for failure by nonmovant to establish prima facie case through competent evidence).

Lastly, assuming arguendo that New York Life regarded Plaintiff as disabled within the meaning of the ADA, she would still need to show the Defendant was required to accommodate her absences in September 2001, which resulted in her termination. However, Plaintiff has not shown that the employer regarded these absences as related to IBS symptoms that might require an accommodation. Defendant's motion for summary judgment on Plaintiff's ADA discrimination claim must therefore be granted.[4]

### 2.    *ADA Retaliation*

This court shall now proceed to discuss Plaintiff's ADA retaliation claim. Dismissal of

---

[4] Because plaintiff fails to raise a triable issue of fact whether she is "disabled" or considered disabled by her employer within the meaning of the ADA, this court need not address the issue of whether a hostile workplace environment claim is available under the ADA, which has not been answered by the Second Circuit. See Edwards v. Brookhaven Sci. Assocs., LLC, 390 F. Supp. 2d 225, 230 (E.D.N.Y. 2005) (citing Bonura v. Sears Roebuck & Co., 62 Fed. Appx. 399, 400 n. 3, 2003 WL 21024620, at *1 n.3 (2d Cir. 2003)). However, even if the employer did regard Plaintiff as disabled, and an ADA hostile workplace environment claim is available to her, I find that Plaintiff has failed to show that the comments were of such a pervasive and severe nature to present a cognizable hostile workplace environment claim. "Simple teasing, offhand comments, and isolated incidents . . . will not amount to discriminatory changes  in the terms and conditions of employment" sufficient to meet the threshold of severity or pervasiveness. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (citation and internal quotation marks omitted).

an ADA retaliation claim is not required upon dismissal of an ADA discrimination claim because a successful discrimination claim is not a predicate for a retaliation claim. See Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002); Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 234 (2d Cir. 2000); Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 2000).

The ADA provides that "no person shall discriminate against any individual because such individual . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). "'To establish a prima facie case of retaliation under the ADA, a plaintiff must establish that (1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action.'" Weissman, 214 F.3d at 234 (quoting Sarno, 183 F.3d at 159). It is not necessary for Plaintiff's retaliation claim that her discrimination complaints alleged actual "violation[s] of the statute so long as [s]he can establish that [s]he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated that law." Sarno, 183 F.3d at 159.

Plaintiff claims that New York Life dismissed her because of her complaints about statements and gestures by co-workers indicating that her IBS-related symptoms created noxious odors in her workspace and in the women's restroom. This claim must be dismissed because Plaintiff has failed to establish a causal connection between her complaints and her termination. It is uncontested that Plaintiff was late twice in July and September 2001 without previously notifying her employer that she would be late, contrary to the employer's policy, and that her last absences in September 2001, after she received a final warning notice for latenesses, put her over

the policy limit.  Plaintiff's dismissal pursuant to a clear absence policy after a final warning that future latenesses would result in her dismissal, and the absence of any evidence suggesting that her dismissal was related to her previous complaints, shows a lack of any genuine issue of fact as to whether there was a causal relationship between her complaints and her termination.  See Thompson v. City of New York, 03-CV-4182, 2006 U.S. Dist. LEXIS 59472, at *24-*25 (S.D.N.Y. Aug. 10, 2006) (dismissing ADA retaliation claim because "it is clear that the denial was a result of [plaintiff's] failure to follow [the employer's] policy with respect to sick leave requests") (alteration supplied).

Assuming that Plaintiff had made a prima facie case of retaliation, her claim still fails with respect to her alleged retaliatory dismissal because New York Life established that it fired her pursuant to its absence and lateness policy.  Plaintiff has failed to put forward any evidence that might permit the inference that New York Life's stated reason for termination is pretextual. See Treglia v. Town of Manlius, 313 F.3d 713, 722 (2d Cir. 2002).  Plaintiff's argument that the fact that the employer's final warning and termination came after she presented numerous complaints to her supervisor "highly suggests retaliation" (Crawford Affidavit at 5) is unavailing. To rebut a legitimate, non-discriminatory basis of dismissal, Plaintiff "was obliged to produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [retaliation for complaints of discrimination] was the real reason for the discharge.'" Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (quoting Woroski v. Nashua Corp., 31 F.3d 105, 110 (2d Cir. 1994)) (alteration supplied).  Having failed to provide this court with any competent, admissible evidence that Defendant's purported reason for dismissal was pretextual,

Plaintiff's ADA retaliation claim must be dismissed.

**B.      Plaintiff's Title VII Claims**

*1.      Plaintiff's Hostile Workplace Environment Claim*

Plaintiff's claims that she was subjected to a hostile workplace environment because of her gender.[5] Title VII makes it unlawful for an employer to discriminate against any individual with respect to the "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff proceeds under a "hostile work environment" theory, which requires her to establish "(1) that the 'workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [her] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer.'" Richardson v. New York State Dep't of Correctional Serv., 180 F.3d 426, 436 (2d Cir. 1999) (quoting Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) (citation and internal quotation omitted)).

In Harris v. Forklift Systems, 510 U.S. 17 (1993), the Supreme Court established a non-exclusive list of factors relevant in determining whether a given workplace is permeated with discrimination so "severe or pervasive" as to support a Title VII claim. Id. These include (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a "mere offensive utterance;" (4) whether the conduct

---

[5] I note that although Plaintiff claims to have been discriminated against because of her religion, Plaintiff alleges no specific instance of religious discrimination, beyond her argument that her termination was in part based on her activities as a Jehovah's Witness. However, inasmuch as Plaintiff acknowledges that New York Life accommodated her ministry practices and offers no evidence that religion played any role whatsoever in her hostile workplace environment allegations and her dismissal, I dismiss this claim without further discussion.

unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted. Id. at 23.

Under the standards set forth in Harris, Defendant's motion for summary judgment must be granted on this claim. Plaintiff alleges that in the year that she worked an as employee of New York Life, she alleges that a male co-worker directed comment about "bra-size" in her direction, that the same worker made a comment in her general area that female Jehovah's Witnesses in his neighborhood had "let themselves go," and that a female co-worker made a statement that Plaintiff understood as insinuating that Plaintiff wore tight clothes and was overweight.

Utilizing the framework articulated by the Supreme Court in Harris, the first three factors, the frequency, severity, and nature of the incidents, weigh against Plaintiff's hostile workplace environment claim. Plaintiff's allegations elicit only three unconnected incidents that implicate her gender. Generally, isolated incidents of harassment do not give rise to a hostile work environment claim; instead, the incidents must be "sufficiently continuous and concerted in order to be deemed pervasive." Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997) (internal citations and quotation marks omitted). Of course, the fact that Plaintiff only alleges three incidents is not dispositive; even a single "extraordinarily severe" incident is sufficient to establish a hostile workplace environment claim if it "altered the conditions of her working environment." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (internal quotations, citation omitted). However, these isolated comments were not severe in nature and cannot be inferred to have changed Plaintiff's working environment. See Faragher, 524 U.S. at 788. None of these comments was stated directly to Plaintiff; rather they were indirect and oblique, and to the extent that Plaintiff was offended by them, they required an inference by Plaintiff that they

were directed at her. Assuming that Plaintiff correctly appreciated the intent of the comments, they were not threatening or humiliating, but were merely offensive. See Harris, 510 U.S. at 23. Thus, Plaintiff has failed to allege incidents of sexual harassment that were frequent, severe, threatening or humiliating.

Plaintiff offers no evidence regarding the last two factors, whether the incidents interfered with Plaintiff's work or caused any lasting psychological harm. The fact that Plaintiff alleges that her work performance remained consistently acceptable to New York Life throughout her tenure suggests that these comments had no impact on her work. Plaintiff's deposition testimony and Affidavit do not allege or suggest that she suffered or continues to suffer any psychological harm from these comments. In conclusion, I find that these three incidents, while they may have been offensive, are isolated, minor, and did not disrupt Plaintiff's work or cause psychological harm. Plaintiff therefore fails to establish a cognizable Title VII hostile workplace environment claim.

**2.      *Plaintiff's Title VII Retaliatory Discharge Claim***

Lastly, Plaintiff alleges in her amended complaint and a signed Affidavit provided in opposition to Defendant's motion that her termination was also in retaliation for her previous complaints of sexual harassment. (Crawford Affidavit at 4.) Title VII provides that it "shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [such employee] has opposed any practice made an unlawful practice by this subchapter." 42 U.S.C. § 2000e-3(a). The Second Circuit instructs that a Title VII retaliation claim is analyzed under the burden shifting rules established by the Supreme Court in McDonnell Douglas v. Green, 411 U.S. 792, 802-803 (1973):

In the context of a motion for summary judgment, the plaintiff must first
demonstrate a prima facie case of retaliation, after which the defendant has the
burden of pointing to evidence that there was a legitimate, nonretaliatory reason
for the complained of action. If the defendant meets its burden, the plaintiff must
demonstrate that there is sufficient potential proof for a reasonable jury to find the
proffered legitimate reason merely a pretext for impermissible retaliation.

Richardson v. New York State Dep't of Correctional Serv., 180 F.3d 426, 443 (2d Cir. 1999)

(citing Gallagher v. Delaney, 139 F.3d 338, 349 (2d Cir. 1997)).

"To establish a prima facie case of retaliation a plaintiff must show (1) participation in a

protected activity that is known to the defendant, (2) an employment decision or action

disadvantaging the plaintiff, and (3) a causal connection between the protected activity and the

adverse decision."  Richardson v. New York State Dep't of Correctional Serv., 180 F.3d 426,

443 (2d Cir. 1999) (citing Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 713 (2d Cir.

1996))

Plaintiff bases her Title VII retaliation claim on the allegations that the employer allowed

her co-workers to make demeaning comments about her and women generally, and that her

termination was caused in part by her complaints about the comments.  "An employee could

suffer a materially adverse change in the terms and conditions of her employment if her employer

knew about but failed to take action to abate retaliatory harassment inflicted by co-workers."

Id. at 445.  However, Crawford proffers no evidence to suggest that co-worker comments were

retaliatory in nature, or that the employer failed to address her complaints of mistreatment by co-

workers.  There is therefore no issue of triable fact regarding Plaintiff's retaliation claim based on

failure to abate retaliatory harassment by co-workers.

To the extent that Plaintiff claims that her termination was the result of gender or

religious discrimination, Plaintiff expressly denied in her deposition that she was dismissed because of her gender or religion.  Her deposition testimony is as follows:

> Q:     Do you believe that you were terminated because of your gender?
>
> A:     No.
>
> Q:     Do you believe you were terminated because of your religion?
>
> A:     No.
>
> Q.     Do you believe you were terminated because of your having IBS?
>
> A:     Yes.

(Crawford Dep. at 261.)  Because Plaintiff expressly denied that her termination was motivated by religious or gender animus, and her testimony that she was terminated because of her symptoms of IBS is consistent with Plaintiff's other deposition testimony, I reject Plaintiff's subsequent Affidavit that her termination was also motivated by religious and sexual harassment as self-serving and contradicted by her sworn and credible testimony in her deposition.

Furthermore, for the reasons stated above in Section II(A)(2) regarding ADA retaliation, I find that Plaintiff's Title VII retaliatory discharge claim must be dismissed because New York Life has demonstrated a legitimate, non-discriminatory reason for Plaintiff's termination, which Plaintiff has failed to rebut.  Accordingly, Plaintiff presents no triable issue of fact as to whether Defendant's stated reason for Plaintiff's termination was pretextual.

**III.    CONCLUSION**

Defendant's motion for summary judgment is GRANTED in its entirety.  The Clerk of

Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
          September 27, 2006.

                                        _____/s/_____
                                        NICHOLAS G. GARAUFIS
                                        United States District Judge